**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

NATHALIE GUZMAN GONZALEZ, *by and
through her next friend*, YAREMI GONZÁLEZ
REINOSO,

      Petitioner,

v.                                                                                    Civ. No. 26-85 SMD/KK

KRISTI NOEM, *Secretary, United States Department
of Homeland Security*, MARY DE ANDA-YBARRA,
*Field Office Director for Enforcement and Removal
Operations, El Paso Field Office, United States
Immigration and Customs Enforcement, and* DORA
CASTRO, *Warden of Otero County Processing Center*,

      Respondents.

<u>**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**</u>

Before the Court is Petitioner Nathalie Guzman Gonzalez's Petition for Writ of Habeas Corpus (Doc. 1) ("Petition"), filed January 16, 2026. Respondents filed a Response to the Petition on January 27, 2026, (Doc. 6), and Petitioner did not file a reply within the time allowed. United States District Judge Sarah M. Davenport referred this case to me under 28 U.S.C. § 636(b) and *Virginia Beach Federal Savings & Loan Association v. Wood*, 901 F.2d 849 (10th Cir. 1990), "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 4.) Having reviewed the parties' submissions, the record, and the relevant law, I RECOMMEND that the Court GRANT the Petition and order Respondents to release and refrain from re-detaining Petitioner pending final resolution of removal proceedings against her, unless they first provide her with notice and an opportunity to be heard at a bond hearing under 8 U.S.C. § 1226(a).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

Petitioner is a citizen of Cuba who entered the United States without inspection on or about November 24, 2022. (Doc. 1 at 3, 23-24; Doc. 6 at 1-2; Doc. 6-1 at 3; Doc. 6-2 at 1.) Shortly after her arrival, United States immigration officials executed a warrant for her arrest and detained her "as authorized by section 236 of the Immigration and Nationality Act," *i.e.*, 8 U.S.C. § 1226. (Doc. 1 at 23-24, 26.) On November 26, 2022, immigration officials released Petitioner on her own recognizance, again "[i]n accordance with section 236 of the Immigration and Nationality Act." (*Id.* at 4, 18, 28.)

Petitioner has resided in the United States continuously since November 2022. (*Id.* at 4, 11.) She has no criminal history and has fully complied with the conditions of her release. (*Id.*) On or about March 6, 2023, Petitioner filed an application for asylum and withholding of removal, and on January 29, 2024, she requested parole pursuant to 8 U.S.C. § 1225[2] in order to satisfy a requirement for relief under the Cuban Adjustment Act ("CAA").[3] (*Id.* at 56-60, 62-65.) As of

---

[1] The following facts are taken from Petitioner's Petition and the Federal Respondents' Response thereto. (Docs. 1, 6.) At a hearing on January 30, 2026, Respondents did not dispute the material facts alleged in the Petition. (Doc. 17.)

[2] The record does not reflect the current status of Petitioner's request for parole under 8 U.S.C. § 1225, and the Petition does not challenge any governmental action or inaction on this request. (*See generally* Doc. 1.) Thus, I do not address whether the Court would have jurisdiction over any such challenge or, if so, how it should be resolved. Rather, I limit my analysis to the arguments raised in the Petition, *i.e.*, whether Respondents' November 2025 re-detention of Petitioner was unlawful or unconstitutional.

[3] "Under the CAA, an alien who is a native or citizen of Cuba can, in certain circumstances, apply to adjust her status to that of a lawful permanent resident." *Alonso v. U.S. Att'y Gen.*, 810 F. App'x 813, 814 (11th Cir. 2020); *Concha-Gonzales v. Noem*, Civ. No. 26-1, 2026 WL 194178, at *4 (D. Colo. Jan. 26, 2026). Specifically, the CAA provides:

> the status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959 and has been physically present in the United States for at least two years, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence.

CAA, Pub. L. No. 89-732, § 1.

November 2025, she was enrolled as a full-time student in a dental assistant program and was close to graduating. (*Id.* at 13, 47.)

Nevertheless, on or about November 24, 2025, immigration officials re-detained Petitioner when she appeared at a field office of the United States Department of Homeland Security ("DHS") for a scheduled appointment. (*Id.* at 4, 11; Doc. 6-1 at 1-4.) On December 18, 2025, an Immigration Judge ("IJ") denied Petitioner's request for a custody redetermination based on "lack of jurisdiction – Matter of Hurtado in the alternative and flight risk and speculative form of relief." (Doc. 6-3 at 1-2.) Respondents have presented no evidence that Petitioner is a flight risk, though they had the opportunity to do so at a hearing on January 30, 2026. (Doc. 17.)

Proceeding *pro se* by and through her mother and next friend Yaremi González Reinoso, Petitioner filed her Petition pursuant to 28 U.S.C. § 2241 on January 16, 2026. (Doc. 1.) In the Petition, Petitioner asks the Court to: (1) declare her November 2025 re-detention unlawful; (2) order Respondents to release her immediately under reasonable conditions of supervision; and, (3) prohibit Respondents from transferring her outside the District of New Mexico while this matter is pending.[4] (*Id.* at 7-8.)

On January 30, 2026, I held an evidentiary hearing at which Petitioner and counsel for Respondents appeared. (Doc. 17.) At the hearing, the Federal Respondents requested time to review the record of Petitioner's December 18, 2025 hearing before the IJ, to determine whether Petitioner was given the opportunity to present evidence or argument and whether the IJ made an explicit alternative finding under 8 U.S.C. § 1226 that Petitioner is a flight risk. (*Id.*) Petitioner stated that she was not allowed to make any presentation at the December 2025 hearing. (*Id.*) I

---

[4] On January 20, 2026, the Court effectively granted Petitioner's third request for relief by enjoining Respondents "from transferring [Petitioner] from the District of New Mexico while these proceedings remain pending, absent express written authorization from this Court." (Doc. 3 at 3.)

granted the Federal Respondents time to review the hearing record and directed them to file a notice indicating whether the IJ made explicit findings under 8 U.S.C. § 1226, and whether Respondents sought additional time to supplement their response to Petitioner's Petition. (*Id.*)

On February 4, 2026, the Federal Respondents filed a Notice Regarding Bond Hearing of December 18, 2025 (Doc. 19) ("Notice"). In the Notice, they indicated that they have reviewed the audio recording of the December 2025 hearing before the IJ, and that they "[d]o not contend that the IJ made an explicit alternative finding under 8 U.S.C. § 1226." (*Id.* at 1.) The Federal Respondents have not sought any additional time to supplement their response to Petitioner's Petition. (*See generally id.*)

After the Federal Respondents filed their Notice, I entered an Order Granting Release Pending Resolution of Habeas Petition Under the Court's Inherent Authority (Doc. 20) ("Interim Release Order"). In the Interim Release Order, I found that: (1) "Petitioner has demonstrated a clear case on the merits of the habeas petition to warrant relief"; and, (2) "[t]he record shows that Petitioner is not a danger to the community or a risk of flight, and Respondents have not offered any evidence to the contrary." (*Id.* at 2.) I therefore ordered Respondents to release Petitioner on her own recognizance pending resolution of her Petition, subject to the conditions of release the DHS imposed in November 2022. (*Id.* at 2-3.)

## ANALYSIS

### I.      The Court has jurisdiction over Petitioner's Petition.

As an initial matter, I note that the Court has jurisdiction over Petitioner's Petition. First, absent suspension of the writ, "every individual detained within the United States" may challenge her detention by filing a petition for a writ of habeas corpus. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Under 28 U.S.C. § 2241, the writ is available to a

petitioner who demonstrates that she is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).

Second, as this Court recently stated in a similar case,

> [t]he jurisdiction-stripping provisions of the Immigration and Nationality Act ("INA") do not bar this Court's review. Sections 1252(a)(5) and 1252(b)(9) [of Title 8 of the United States Code] apply only to claims seeking judicial review of final orders of removal.… Here, Petitioner challenges the legality of [her] detention rather than seeking judicial review of an order of removal. As the Supreme Court affirmed in *Zadvydas v. Davis*, the federal habeas statute remains an available remedy for challenging the legality of detention where Congress has not explicitly stripped the courts of such jurisdiction. 533 U.S. 678, 687–88 (2001).

*Ramirez v. Noem,* Civ. No. 26-63, 2026 WL 381869, at *1 (D.N.M. Feb. 11, 2026) (Davenport, J.) (citation omitted).[5]

Third, the Court has jurisdiction over the Petition notwithstanding the IJ's December 18, 2025 order denying Petitioner's request for a custody redetermination based on "lack of jurisdiction – Matter of Hurtado in the alternative and flight risk and speculative form of relief." (Doc. 1 at 44.) It is true that "[t]he Attorney General's discretionary judgment regarding the application of [8 U.S.C. § 1226] shall not be subject to review." 8 U.S.C. § 1226(e). But here it is plain—and the Federal Respondents have essentially conceded—that the IJ did not exercise his discretionary judgment in deciding Petitioner's custody redetermination request and made no

---

[5] Likewise, although 8 U.S.C. § 1252(g)

> provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter[,]" [t]he Supreme Court has limited this bar to these "three discrete actions" and has explicitly rejected interpretations that would encompass the "universe of deportation claims." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). The Court … has cautioned against an "uncritical literalism" that would bar review of all claims technically "arising from" those three actions. *Jennings v. Rodriguez*, 583 U.S. 281, 293–95 (2018).

*Ramirez*, 2026 WL 381869, at *2.

5

findings on the propriety of her re-detention under 8 U.S.C. § 1226. (Doc. 19 at 1.) Rather, the IJ denied Petitioner's request on the basis that he lacked jurisdiction to consider it pursuant to *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025), and indicated that he would consider its substance only "if the District Court found a habeas violation." (*Id.*)

**II.    Respondents' re-detention of Petitioner was unlawful because they did not provide her with a bond hearing under 8 U.S.C. 1226(a).**

As noted above, in November 2022, immigration officials detained Petitioner and subsequently released her on her own recognizance under 8 U.S.C. § 1226(a). Now, however, Respondents contend that they properly re-detained her in November 2025 because she is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). (Doc. 6 at 1.) This change in the government's position results not from anything Petitioner did or failed to do in the intervening period, but rather from a recent "policy shift," pursuant to which the DHS has "deviated from decades of established practice by recategorizing virtually all noncitizens present in the country who initially entered without inspection as 'applicants for admission' subject to a mandatory detention under § 1225(b)." *Ramirez*, 2026 WL 381869, at *2. The Court must therefore decide whether Petitioner is in fact subject to mandatory detention under Section 1225(b)(2)(A), or rather whether the discretionary provisions of Section 1226(a) govern her custodial status.

As the foregoing discussion suggests, two relevant statutory provisions govern whether a noncitizen is subject to mandatory detention or is eligible for a bond hearing and release. The first provision, 8 U.S.C. § 1225(b), provides in pertinent part that, "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an *alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained[.]" 8 U.S.C. § 1225(b)(2)(A) (emphases added). Section 1225 defines the term "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in

the United States … whether or not at a designated port of arrival," but does not define the term "alien seeking admission." 8 U.S.C. § 1225(a)(1) (parenthesis omitted).

The second provision, 8 U.S.C. § 1226(a), provides that

[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—(1) may continue to detain the arrested alien; and (2) may release the alien on … bond … or … conditional parole[.]

8 U.S.C. § 1226(a). Noncitizens detained pursuant to Section 1226(a) are "generally entitled to individualized bond hearings."[6] *Quishpi Morocho v. Castro*, Civ. No. 26-135, 2026 WL 575762, at *2 (D.N.M. Mar. 2, 2026) (Davenport, J.). "Sections 1225(b)(2)(A) and 1226(a) are mutually exclusive in that both provisions cannot simultaneously govern [a noncitizen's immigration] detention." *Id.*

As noted above, Respondents contend that they properly re-detained Petitioner in November 2025 under Section 1225(b)(2)(A). However, the following six reasons confirm that Section 1226(a) governs Petitioner's re-detention.

First, the Supreme Court's analysis in *Jennings v. Rodriguez*, 583 U.S. 281 (2018) "made clear that aliens already in the country are governed by" Section 1226(a) rather than Section 1225(b). *Ramirez*, 2026 WL 381869, at *5 (quotation marks omitted). The *Jennings* Court explained that Section 1225(b) "applies primarily to aliens seeking entry into the United States[.]" *Jennings*, 583 U.S. at 297. In contrast, the Court explained that Section 1226(a) "applies to aliens already present in the United States." *Id.* at 303. The Court further noted that "Section 1226(a)

---

[6] To be released under Section 1226(a), a noncitizen "must demonstrate to the satisfaction of the [arresting immigration] officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). In addition, the noncitizen must not fall into any of the categories listed in "subsection (c)," which provides for the mandatory detention of certain "criminal aliens." 8 U.S.C. § 1226(a), (c).

creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and alternatively "permits the Attorney General to release those aliens on bond." *Id.*

In sum, *Jennings* "unambiguously" supports three conclusions, *i.e.*, that: (1) "aliens 'seeking admission' into the country are different from aliens 'already in the country'"; (2) Section 1225(b)(2) "primarily appl[ies] to people seeking to enter the country," while Section 1226(a) "primarily appl[ies] to people who are already in the country"; and, (3) "'seeking admission into the country' refers to the physical act of trying to cross into U.S. territory" rather than "a legal and theoretical admission for those who are already corporally in the country but legally are not." *Ramirez*, 2026 WL 381869, at *5. At the time of her re-detention, Petitioner had been physically present in the United States for three years. Thus, *Jennings* dictates that Section 1226(a) rather than Section 1225(b) governs her custodial status.

Second, in November 2022, Petitioner was undisputedly detained and released under 8 U.S.C. § 1226(a). Indeed, the warrant and release order attached to the Petition specifically state that Petitioner was arrested and released pursuant to "section 236 of the Immigration and Nationality Act"—*i.e.*, 8 U.S.C. § 1226. (Doc. 1 at 18, 26.) Moreover, logically, Petitioner had to have been detained and released under Section 1226(a) rather than Section 1225(b)(2)(A), because Section 1226(a) allows for a noncitizen to be released on her own recognizance, *i.e.*, on "conditional parole," pending removal proceedings, while Section 1225(b)(2)(A) provides that an alien seeking admission "shall be detained" unless an examining immigration officer determines that she is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. §§ 1225(b)(2)(A), 1226(a). And here, because Petitioner was immediately placed in removal proceedings, (*see* Doc. 1 at 18, 24), it is plain that no examining immigration officer found her clearly and beyond a doubt

entitled to be admitted. As the statutory provision under which Petitioner was initially detained and released, Section 1226(a) is also the statutory provision that should govern any re-detention.

Third, by its plain meaning, Section 1225(b)(2)(A) simply does not encompass Petitioner's current circumstances. "[T]o trigger mandatory detention under [Section 1225(b)(2)(A)], three things must be true. The alien must be: (1) an applicant for admission, (2) [an alien] seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted." *Ramirez*, 2026 WL 381869, at *4 (quotation marks omitted). To support their position that Petitioner is subject to mandatory detention under this provision, Respondents attempt to merge two of its three requirements, arguing that any individual classified as an "applicant for admission" is necessarily "an alien seeking admission" as well. (*See* Doc. 6 at 10-11.) However, as applied to Petitioner, Respondents' argument is not persuasive.

Respondents are arguably correct that a noncitizen who, like Petitioner, has never lawfully entered the United States but has been physically present here for years falls within the statutory definition of the term "applicant for admission," *i.e.*, "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). But individuals like Petitioner do not fall within the plain meaning of the phrase "alien seeking admission," because "admission" is defined as lawful "entry" into the United States, 8 U.S.C. § 1101(a)(13)(A), and these individuals "ha[ve] already entered the country." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 488 (S.D.N.Y. 2025) (quotation marks omitted). What individuals like Petitioner are seeking—in her case, via an application for asylum and a parole request—is not lawful entry into the United States but rather "a lawful means of remaining" here. *Id.* at 489; *see also, e.g., Kashranov v. Jamison*, Civ. No. 25-5555, 2025 WL 3188399, at *6 (E.D. Pa. Nov. 14, 2025) ("While [the petitioner] is an applicant for admission, he is not seeking admission. He's already here.").

9

Fourth, Respondents' attempt to merge Section 1225(b)(2)(A)'s "applicant for admission" and "alien seeking admission" requirements would render the statute's "use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025). If Section 1225(b)(2)(A) were construed to apply to *all* "applicants for admission," *i.e.*, those who "arrive[] in the United States" *and* those already "present in the United States who ha[ve] not been admitted," 8 U.S.C. § 1225(a)(1), then the language limiting Section 1225(b)(2)(A) to applicants for admission who are also "alien[s] seeking admission" would add nothing to the statute. 8 U.S.C. § 1225(b)(2)(A). "By reading a phrase out of the statute, Respondents' interpretation of § 1225 clearly violates the rule against surplusage." *Lopez Benitez*, 795 F. Supp. 3d at 488 (quotation marks omitted); *see United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning[.]") (quotation marks omitted); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[A] statute ought … to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").[7]

Fifth, interpreting Section 1225(b)(2)(A) as Respondents request would also

> render[] § 1226 partially superfluous. Section 1226(c)(1) serves as § 1226's own mandatory detention provision, listing criminal and terrorism offenses that render noncitizens otherwise covered by § 1226 subject to mandatory detention. Congress expanded that list last year through the Laken Riley Act, which added offenses like theft and assault of a law enforcement officer…. This recent legislation, along with a bulk of § 1226 would be rendered unnecessary if Respondents' interpretation were correct. Congress would not have gone through the trouble of adding more crimes

---

[7] Relatedly, Respondents' equation of the terms "applicant for admission" and "alien seeking admission" as used in Section 1225(b)(2)(A) would be contrary to the presumption that Congress intended different words or phrases to be accorded different meanings. *Lopez Benitez*, 795 F. Supp. 3d at 488.

> A variation in terms suggests a variation in meaning. *Buenrostro-Mendez v. Bondi*, [166 F.4th 494, 510 (5th Cir. 2026)] (Douglas, J., dissenting). Within the context of § 1225, it is illogical to use the terms "applicant for admission" and "seeking admission" interchangeably.

*Ramirez*, 2026 WL 381869, at *5.

that trigger mandatory detention if § 1225(b)(2)(A) already requires detention for that same population.

*Ramirez*, 2026 WL 381869, at *5 (citations omitted).

Sixth and finally, Respondents' construction would expand Section 1225(b)(2)(A)'s reach

far beyond how it has been enforced historically, potentially subjecting millions more undocumented immigrants to mandatory detention, while simultaneously narrowing [Section] 1226(a) such that it would have extremely limited … application.

*Lopez Benitez*, 795 F. Supp. 3d at 490 (footnote omitted). "[T]he line historically drawn between" Sections 1225(b)(2)(A) and 1226(a)—including by the DHS—and which "makes sense of their text and the overall statutory scheme, is that [S]ection 1225 governs detention of noncitizens seeking admission into the country, whereas [S]ection 1226 governs detention of noncitizens already in the country." *Id.* at 490-91 (brackets and quotation marks omitted).

Respondents have proffered no sufficiently persuasive reason to justify the radical shift they urge in the interpretation of Sections 1225(b)(2)(A) and 1226(a). To support their position, Respondents cite to the BIA decision *In the Matter of Yajure Hurtado*, 29 I. & N. Dec. at 216. (Doc. 6 at 1, 5, 9-10.) But BIA decisions are not binding authority on the Court. Indeed, the Supreme Court has recently directed district courts to "exercise independent judgment in determining the meaning of statutory provisions" and "not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 413 (2024). Moreover, the BIA's conclusion in *Yajure Hurtado* conflicts with the Supreme Court's reasoning in *Jennings* that Section 1226 is the statutory provision applicable to noncitizens already residing in the United States, 583 U.S. at 303; and, other district courts have explicitly rejected *Yajure Hurtado* for this reason. *See, e.g.*, *Martinez-Elvir v. Olson,* 807 F. Supp. 3d 725, 740-41 (W.D. Ky. 2025); *Mendoza Gutierrez v. Baltasar*, Civ. No. 25-2720, 2025 WL 2962908, at *1 (D.

11

Colo. Oct. 17, 2025). Also, *Yajure Hurtado* fails to satisfactorily address the five other reasons discussed above for applying Section 1226 to noncitizens already present in the United States.

In addition to *Yajure Hurtado*, I acknowledge the Fifth Circuit's decision in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), in which the majority adopted Respondents' interpretation of Section 1225(b)(2)(A), and with which I respectfully disagree and find Judge Douglas's dissent more persuasive. In any event, that decision is likewise "not binding here," and "contradicts the vast majority of district court opinions addressing the issue." *Fernandez Alvarez v. Noem,* Civ. No. 26-313, 2026 WL 482408, at *1 n.1 (M.D. Fla. Feb. 20, 2026). Further, "a circuit split is likely" because "[i]n a preliminary decision, the Seventh Circuit considered the government's position on the scope of § 1225(b)(2) and found it unlikely to succeed on the merits." *Id.* (citing *Castañon-Nava*, 161 F.4th at 1060-63); *see also Labrada-Hechavarria v. U.S. Attorney General*, No. 23-13664, 2026 WL 496486, at *2 (11th Cir. Feb. 23, 2026) (per curiam) (noting that "the federal appellate courts are divided as to the applicability of §§ 1225[(b)] and 1226(a)" but "the majority of district courts to have addressed this issue have rejected the government's new position"). For all of the foregoing reasons, Petitioner has shown that she is not subject to mandatory detention under Section 1225(b)(2)(A) and her November 2025 re-detention without an individualized bond hearing pursuant to Section 1226(a) was unlawful.

## III.    Respondents' re-detention of Petitioner violated her right to due process.

In addition to being unlawful, Respondents' November 2025 re-detention of Petitioner violated her rights under the Due Process Clause of the Fifth Amendment.

> Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.

*Quishpi Morocho*, 2026 WL 575762, at *2.

12

With respect to the first step of this analysis, Petitioner has demonstrated a protected liberty interest in remaining free from immigration detention. Courts have resolved the question of whether a plaintiff's conditional release from custody rises to the level of a protected liberty interest by comparing the release at issue to the plaintiff's liberty interest in continued parole discussed in *Morrissey v. Brewer*, 408 U.S. 471 (1972); *see, e.g., Young v. Harper*, 520 U.S. 143, 148-52 (1997); *Hurd v. District of Columbia*, 864 F.3d 671, 682-84 (D.C. Cir. 2017); *González-Fuentes v. Molina*, 607 F.3d 864, 886-90 (1st Cir. 2010). In *Morrissey*, the Supreme Court observed that a parolee's "condition is very different from that of confinement in a prison." 408 U.S. at 482. "The liberty of a parolee enables him to do a wide range of things" unavailable to a prisoner. *Id.* For example, "[s]ubject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* The Court therefore concluded that a parolee's "liberty is valuable and must be seen as within the protection" of due process. *Id.*; *see also Young*, 520 U.S. at 148 (holding that petitioner had a protected liberty interest in continued release on "preparole" where "[h]e kept his own residence; he sought, obtained, and maintained a job; and he lived a life generally free of the incidents of imprisonment").

A number of district courts have extended this reasoning to the immigration context and have held that, once released from immigration detention, noncitizens acquire a protectable liberty interest in remaining out of custody on bond. *See, e.g., Ramirez*, 2026 WL 381869, at *6; *Patino-Arroyo v. Noem*, Civ. No. 26-91, 2026 WL 323630, at *2 (D.N.M. Feb. 6, 2026) (Gonzales, J.); *Diallo v. Orozco*, Civ. No. 26-66, 2026 WL 608746, at *3 (D.N.M. Mar. 4, 2026) (Garcia, J.); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole,

parole, and probation status have a liberty interest, so too does [a petitioner released from immigration custody] have a liberty interest in remaining out of custody on bond.").

Because she spent three years at liberty within the United States before she was re-detained, Petitioner acquired a cognizable interest in remaining free from immigration detention. Remaining out of custody enabled Petitioner to do a "wide range of things," including live in a home of her choosing, pursue studies at a vocational school, and "form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Nor is this "a case in which Petitioner evaded immigration authorities and remained lurking undetected in the United States until [her] recent detention." *Ramirez*, 2026 WL 381869, at *7. On the contrary, Petitioner undisputedly maintained contact with immigration officials as required throughout her three-year residence in the country.

Turning to the second step in the due-process analysis, Petitioner has also shown that she was re-detained without the procedural safeguards to which she was constitutionally entitled. *See Morrissey*, 408 U.S. at 481 ("Once it is determined that due process applies, the question remains what process is due."). In considering this step, courts weigh the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976): (1) "the private interest that will be affected by the official action," (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

Regarding the first *Mathews* factor, Petitioner has a significant private interest in remaining free from detention after being released on her own recognizance. "Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. And Petitioner's interest

14

in freedom from immigration detention is particularly weighty because she has spent three years out of custody, pursuing goals and forming ties within the community.

Regarding the second *Mathews* factor, Petitioner plainly faced a significant risk of erroneous deprivation through the procedures Respondents used to re-detain her. To be released under Section 1226(a), a noncitizen must not be a "criminal alien[]" under Section 1226(c), 8 U.S.C. § 1226(a), (c), and must show that her "release would not pose a danger to property or persons" and that she "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). Of course, under 8 U.S.C. § 1226(b), the DHS has the authority to revoke a noncitizen's release "at any time." But as many courts have noted, the BIA has long recognized a limitation on this authority, requiring a material change in circumstances before it can be exercised. *See, e.g., Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (citing *In re Sugay*, 17 I & N Dec. 637 (B.I.A. 1981)); *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 262-63 (D. Me. 2025) (same); *Ortega*, 415 F. Supp. 3d at 968 (same); *Lesic v. Larose*, Civ. No. 25-2746, 2025 WL 3158675, at *2 (S.D. Cal. Nov. 12, 2025) (same); *Y.M.M. v. Wamsley*, Civ. No. 25-2075, 2025 WL 3101782, at *2 (W.D. Wash. Nov. 6, 2025) (same); *Dos Santos v. Noem*, Civ. No. 25-12052, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025) (same); *Rosado v. Figueroa*, Civ. No. 25-2157, 2025 WL 2337099, at *12 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, Civ. No. 25-2157, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025) (same). Relying on this limitation, courts have required "a material change in circumstances as to whether the noncitizen poses a danger to the community or an unreasonable risk of flight" before the DHS may revoke her release. *Y.M.M.*, 2025 WL 3101782, at *2 (quotation marks omitted). In other words, "[t]he law requires a change in relevant facts, not just a change in [the government's] attitude." *Singh v.*

*Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025); *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 n.6 (S.D.N.Y. 2025).

Here, it is undisputed that Petitioner was re-detained after three years' release on her own recognizance without a substantive, individualized bond hearing or any other procedural safeguard to assess whether there had been any change in relevant facts. It is also undisputed that there had in fact been no such change, and that Petitioner has never been a flight risk or a danger, has no criminal record, and has complied with all of the terms of her release. There is thus at the very least a significant risk that she was erroneously deprived of her protected liberty interest in remaining released on her own recognizance through Respondents' failure to provide her with a bond hearing under Section 1226(a).

Finally, regarding the third *Mathews* factor, the government's interest in re-detaining Petitioner without a bond hearing is low. Again, Respondents have presented no evidence tending to show that Petitioner is either a danger or a flight risk. She appears to have family ties in this country; she has no criminal record; she has pursued full-time studies in a vocational program; she has complied with all of the conditions of her release; and, she has a pending asylum petition and parole request. Detaining her therefore appears to serve no valid purpose—a fact her initial release confirms. In addition, custody hearings in immigration court are relatively "routine" and do not impose a heavy burden on the government. *Singh*, 803 F. Supp. 3d at 1048. For all of the above reasons, Petitioner has shown that Respondents violated her Fifth Amendment rights by re-detaining her without constitutionally adequate process.

## CONCLUSION

For all of the above reasons, I RECOMMEND that the Court:

1.      GRANT Petitioner's Petition for Writ of Habeas Corpus (Doc. 1);

16

2.      DECLARE Petitioner's November 2025 re-detention unlawful and in violation of her rights under the Due Process Clause of the Fifth Amendment; and,

3.      ORDER Respondents to release Petitioner and refrain from re-detaining her pending final resolution of removal proceedings against her, unless they provide her with a pre-deprivation hearing before a neutral Immigration Judge pursuant to 8 U.S.C. § 1226(a), at which they must prove by clear and convincing evidence that she is a danger or flight risk. *See Quishpi Morocho*, 2026 WL 575762, at *3.

_____

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**